**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X
                   :

DIANNE M. LAROE and TA'KAIYA BLANEY,    :    No. 1:18-cv-05610-LDH-VMS

           Plaintiffs,    :
                   :

      -against-    :    ECF Case
                   :

XYZ FILMS, LLC, NETFLIX, INC.,    :
AMAZON.COM, INC., APPLE, INC. and    :
GOOGLE LLC,    :
           Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Seth D. Berlin           Thomas B. Sullivan
BALLARD SPAHR LLP           BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor           1675 Broadway, 19th Floor
Washington, DC 20006           New York, NY 10019
Tel: (202) 508-1122           Tel: (212) 850-6139
Fax: (202) 661-2299           Fax: (212) 223-1942
berlins@ballardspahr.com           sullivant@ballardspahr.com

*Attorneys for Defendants*

Served January 31, 2019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ....................................................................................................1

ARGUMENT .........................................................................................................................3

I.      PLAINTIFF LAROE FAILS TO STATE A CLAIM FOR COPYRIGHT
        INFRINGEMENT.......................................................................................................3

        A.      The Background Use of the Mural Was *De Minimis* and Therefore
                Not Actionable .................................................................................................3

        B.      Alternatively, The Display of the Mural in *Bushwick* Was a
                Nonactionable Fair Use....................................................................................8

                1.      The Purpose and Character of the Use Strongly Favors a
                        Finding of Fair Use ...............................................................................9

                2.      The Nature of the Work Weighs in Favor of Fair Use ...........................11

                3.      The Amount and Substantiality of the Portion Used Favors a
                        Finding of Fair Use .............................................................................12

                4.      The Effect of the Use Upon the Potential Market Weighs in
                        Favor of Fair Use .................................................................................12

        C.      LaRoe Is Not Entitled to an Award of Statutory Damages or
                Attorney's Fees ...............................................................................................14

II.     NEITHER PLAINTIFF STATES A CLAIM FOR FALSE ENDORSEMENT ...............16

        A.      LaRoe's Claim Is Duplicative of Her Copyright Claim and Precluded
                Under *Dastar* .................................................................................................16

        B.      Plaintiffs Fail To Plead Essential Elements of a False Endorsement
                Claim.................................................................................................................17

        C.      The First Amendment Also Precludes Plaintiffs' False Endorsement
                Claim.................................................................................................................19

III.    PLAINTIFF BLANEY FAILS TO STATE A CLAIM FOR
        MISAPPROPRIATION OF HER RIGHT OF PUBLICITY...........................................21

        A.      Blaney's Misappropriation Claim Is Barred by the Statute of
                Limitations .......................................................................................................21

B.    Because Blaney's Claim is Based on an Artistic Use, it Fails as a
      Matter of Law ...........................................................................................................22

C.    The *De Minimis* Use of Blaney's Image Is Not Actionable
      Misappropriation...........................................................................................................24

CONCLUSION...........................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................3

*Authors Guild v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015).................................................................................................11

*Avon Products, Inc. v. S.C. Johnson & Son, Inc.*,
984 F. Supp. 768 (S.D.N.Y. 1997) ......................................................................................18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................3

*Bill Graham Archives v. Dorling Kindersely Ltd.*,
448 F.3d 605 (2d Cir. 2006)........................................................................................ *passim*

*Blakeman v. The Walt Disney Co.*,
613 F. Supp. 2d 288 (E.D.N.Y. 2009) ..................................................................................2

*Blanch v. Koons*,
467 F.3d 244 (2d Cir. 2006).......................................................................................9, 11, 12

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) ...............................................................................................24

*Bouchat v. Bon-Ton Department Stores, Inc.*,
506 F.3d 315 (4th Cir. 2007) ...............................................................................................15

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)....................................................................................................9, 11, 12

*Candelaria v. Spurlock*,
2008 WL 2640471 (E.D.N.Y. July 3, 2008) ..................................................................23, 24

*Cantor Fitzgerald Inc. v. Lutnick*,
313 F.3d 704 (2d Cir. 2002)..................................................................................................21

*Cariou v. Prince*,
714 F.3d 694 (2d Cir. 2013)...............................................................................9, 10, 12, 13

*Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc.*,
150 F.3d 132 (2d Cir. 1988)......................................................................................4, 8, 9, 13

*Cecere v. R.J. Reynolds Tobacco Co.*,
1998 WL 665334 (S.D.N.Y. Sept. 22, 1998).......................................................................18

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group, Inc.*,
    886 F.2d 490 (2d Cir. 1989)................................................................................20

*Costanza v. Seinfeld*,
    279 A.D.2d 255 (1st Dep't 2001) .......................................................................22

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)...............................................................................................16

*Davis v. The Gap, Inc.*,
    246 F.3d 152 (2d Cir. 2001)........................................................................4, 9, 13

*Duncan v. Universal Music Group Inc.*,
    2012 WL 1965398 (E.D.N.Y. May 31, 2012) .......................................21, 22, 23

*Eng v. Baldwin*,
    2014 WL 2465763 (E.D.N.Y. May 30, 2014) ......................................................2

*Finger v. Omni Publications International, Ltd.*,
    77 N.Y.2d 138 (1990) .........................................................................................22

*Fioranelli v. CBS Broadcasting Inc.*,
    232 F. Supp. 3d 531 (S.D.N.Y. 2017)...........................................................14, 15

*Fischer v. Forrest*,
    2017 WL 2992663 (S.D.N.Y. July 14, 2017) ...............................................15, 16

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
    409 F. Supp. 2d 259 (S.D.N.Y. 2005)................................................................16

*Gayle v. Home Box Office, Inc.*,
    2018 WL 6048022 (2d Cir. Sept. 13, 2018) ................................................5, 6, 7

*Gayle v. Home Box Office, Inc.*,
    2018 WL 2059657 (S.D.N.Y. May 1, 2018) ............................................. *passim*

*Girl Scouts of USA v. Bantam Doubleday Dell Publishing Group, Inc.*,
    808 F. Supp. 1112 (S.D.N.Y. 1992)...................................................................20

*Gordon v. Nextel Communications*,
    345 F.3d 922 (6th Cir. 2003) ...............................................................................7

*Gottlieb Development LLC v. Paramount Pictures Corp.*,
    590 F. Supp. 2d 625 (S.D.N.Y. 2008)......................................................... *passim*

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985)............................................................................................11

*Hirsch v. CBS Broadcasting Inc.*,
  2017 WL 3393845 (S.D.N.Y. Aug 4, 2017) ............................................................................. 7

*Hoepker v. Kruger*,
  200 F. Supp. 2d 340 (S.D.N.Y. 2002) .................................................................................... 23

*Hudson v. Universal Pictures Corp.*,
  2004 WL 1205762 (E.D.N.Y. Apr. 29, 2004) ......................................................................... 4

*Hudson v. Universal Studios, Inc.*,
  2008 WL 4701488 (S.D.N.Y. Oct. 23, 2008) ........................................................................ 16

*Irwin v. ZDF Enterprises GmbH*,
  2006 WL 374960 (S.D.N.Y. Feb. 16, 2006) .......................................................................... 14

*Italian Book Corp. v. American Broadcasting Companies, Inc.*,
  458 F. Supp. 65 (S.D.N.Y. 1978) .......................................................................................... 10

*Jackson National Life Insurance Co. v. Merrill Lynch & Co.*,
  32 F.3d 697 (2d Cir. 1994) ...................................................................................................... 1

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811 (9th Cir. 2003) ................................................................................................. 11

*Krasnyi Oktyabr, Inc. v. Trilini Imports*,
  2007 WL 1017620 (E.D.N.Y. Mar. 30, 2007) ....................................................................... 19

*L.L. Bean, Inc. v. Drake Publishers, Inc.*,
  811 F.2d 26 (1st Cir. 1987) .............................................................................................. 19, 20

*Laureyssens v. Idea Group, Inc.*,
  964 F.2d 131 (2d Cir. 1992) .................................................................................................... 4

*Leibovitz v. Paramount Pictures Corp.*,
  137 F.3d 109 (2d Cir. 1998) .................................................................................................. 12

*Lemerond v. Twentieth Century Fox Film Corp.*,
  2008 WL 918579 (S.D.N.Y Mar. 31, 2008) ..................................................................... 22, 23

*Lohan v. Perez*,
  924 F. Supp. 2d 447 (E.D.N.Y. 2013) .................................................................................... 23

*Lombardo v. Dr. Seuss Enterprises, L.P.*,
  279 F. Supp. 3d 497 (S.D.N.Y. 2017) ...................................................................................... 9

*Louis Vuitton Malletier S.A. v. Warner Brothers Entertainment*,
  868 F. Supp. 2d 172 (S.D.N.Y. 2012) ............................................................................... 17, 20

*Love v. City of New York*,
  1989 WL 140578 (S.D.N.Y. Nov. 17, 1989) ................................................16

*Man v. Warner Brothers, Inc.*,
  317 F. Supp. 50 (S.D.N.Y. 1970) ....................................................23, 24

*Mayes v. Summit Entertainment Corp.*,
  287 F. Supp. 3d 200 (E.D.N.Y. 2018) .................................................19

*New York Racing Association v. Perlmutter Publishing, Inc.*,
  1996 WL 465298 (N.D.N.Y. July 19, 1996) ...........................................20, 21

*Naked Cowboy v. CBS*,
  844 F. Supp. 2d 510 (S.D.N.Y. 2012) ...................................................17

*Nieves v. Home Box Office, Inc.*,
  11 Misc. 3d 1058(A) (Sup. Ct. N.Y. Cty. 2006) ..........................................23

*Nussenzweig v. diCorcia*,
  9 N.Y.3d 184 (2007) .......................................................................21

*NXIVM Corp. v. Ross Institute*,
  364 F.3d 471 (2d Cir. 2004) ..............................................................12

*Perkins School for the Blind v. Maxi-Aids, Inc.*,
  274 F. Supp. 2d 319 (E.D.N.Y. 2003) ....................................................19

*Peter F. Gaito Architecture, LLC v. Simone Development Corp.*,
  602 F.3d 57 (2d Cir. 2010) .........................................................1, 4, 5

*Preston v. Martin Bregman Productions, Inc.*,
  765 F. Supp. 116 (S.D.N.Y. 1991) .......................................................24

*RCA Trademark Management S.A.S. v. VOXX International Corp.*,
  2015 WL 5008762 (S.D.N.Y. Aug. 24, 2015) .............................................19

*Ringgold v. Black Entertainment Television*,
  126 F.3d 70 (2d Cir. 2001) ................................................................7

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ...........................................................20, 21

*Rudkowski v. MIC Network, Inc.*,
  2018 WL 1801307 (S.D.N.Y. Mar. 23, 2018) ...............................................5

*Sandoval v. New Line Cinema Corp.*,
  147 F.3d 215 (2d Cir. 1998) ..........................................................3, 4

vi

*Sandoval v. New Line Cinema Corp.*,
  973 F. Supp. 409 (S.D.N.Y. 1997) ...................................................................10

*Santora v. Capio Partners, LLC*,
  2017 WL 4334128 (E.D.N.Y. Sept. 28, 2017) ....................................................3

*Simon v. Time Warner Cable, Inc.*,
  2010 WL 4159526 (Sup. Ct. N.Y. Cty. Sept. 21, 2010) ....................................23

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
  2016 WL 4126543 (S.D.N.Y. Aug. 2, 2016) .......................................................14

*Sondik v. Kimmel*,
  131 A.D.3d 1041 (2d Dep't 2015) ......................................................................23

*Straus v. DVC Worldwide, Inc.*,
  484 F. Supp. 2d 620 (S.D. Tex. 2007) ..................................................................7

*Swatch Group Management Services Ltd. v. Bloomberg, LP*,
  756 F.3d 73 (2d Cir. 2014) .................................................................................13

*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016) ...............................................................................10

*Troll Co. v. Uneeda Doll Co.*,
  483 F.3d 150 (2d Cir. 2007) ...............................................................................14

*U2 Home Entertainment, Inc. v. Hong Wei Int'l Trading, Inc.*,
  2008 WL 3906889 (S.D.N.Y. Aug. 21, 2008) ....................................................14

*West Shield Investigations & Security Consultants v. Superior Court*,
  82 Cal. App. 4th 935 (Cal. Ct. App. 2000) .........................................................22

*Wiseau Studio, LLC v. Harper*,
  2017 ONSC 6535 .................................................................................................23

*Yankee Publishing Inc. v. News America Publishing Inc.*,
  809 F. Supp. 267 (S.D.N.Y. 1992) .....................................................................21

**Statutes & Other Authorities**

15 U.S.C. § 1127 .......................................................................................................17

17 U.S.C.
  § 107 ................................................................................................................8, 12
  § 412(2) ...............................................................................................................14

British Columbia Privacy Act, R.S.B.C. 1996, chap. 373,
  § 3(2)..................................................................................................................23
  § 4.......................................................................................................................23

Federal Rule of Civil Procedure 12(b)(6) ...............................................................1

New York Civil Practice Law and Rules
  § 202..................................................................................................................21
  § 215(3)..............................................................................................................21

2 Howard B. Abrams, THE LAW OF COPYRIGHT § 15:52 (2006) ..................................11

Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV. 1105 (1990) ...........................9

6 William F. Patry, PATRY ON COPYRIGHT § 22:201.25 (2018) ..................................16

Defendants XYZ Films, LLC ("XYZ Films"), Netflix, Inc. ("Netflix"), Amazon.com, Inc. ("Amazon"), Apple Inc. ("Apple"), and Google LLC ("Google") (collectively, "Defendants") respectfully submit this memorandum in support of their motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This case arises from the fleeting inclusion of an outdoor mural in the feature film *Bushwick*. The film imagines a modern-day civil war, in which militias of seceding southern states invade New York, including the Bushwick neighborhood of Brooklyn. In the film's opening sequence, actress Brittany Snow emerges from the Jefferson Street subway station and runs through the neighborhood's streets past several pieces of street art. The mural at issue appears in the background for roughly 3.5 seconds, during which it is materially obscured by Ms. Snow and two parked vehicles. The mural was painted by Plaintiff Dianne LaRoe, also known as "LMNOPI" ("LaRoe"), and depicts Plaintiff Ta'Kaiya Blaney ("Blaney"). Based on the mural's fleeting, background use, LaRoe alleges copyright infringement (Count I), both plaintiffs allege false endorsement (Count II), and Blaney alleges misappropriation of her right of publicity (Count III). Plaintiffs' claims fail as a matter of law and should be dismissed with prejudice.

## STATEMENT OF FACTS[1]

In 2014, Plaintiff LaRoe, a Brooklyn-based artist, created a mural titled "Earth Revolution/EVOLVE" (the "Mural"). *See* Compl. ¶ 4 & Ex. 1. The Mural depicts Plaintiff

---

[1] For purposes of this motion only, Defendants accept, as they must, the allegations in Plaintiffs' complaint as true. *See, e.g.*, *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699-700 (2d Cir. 1994). However, "[i]n copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal marks and citations omitted). Therefore, where the Plaintiffs' characterization of *Bushwick* differs from the actual film, this Court properly relies on the film itself.

Blaney, a singer, actress, and environmental activist, with her arms outstretched and the word "EVOLVE" painted across the middle of her chest.  *See id.* ¶¶ 11-12 & Ex. 2.  The Mural is publicly displayed on a wall near the Jefferson Street subway station, at the intersection of Wyckoff and Star Streets in the Bushwick neighborhood of Brooklyn.  *See id.* ¶ 11.

In *Bushwick*'s opening sequence, a character played by actress Brittany Snow emerges from the subway after an explosion and runs through the neighborhood's streets, passing several pieces of street art in the process.  *See* Declaration of Seth D. Berlin ("Berlin Decl."), Ex. A (hereinafter, "Ex. A") at 06:54-07:29.[2]  The Mural appears for roughly 3.5 seconds in the background as Ms. Snow runs past.  *See* Compl. ¶ 13; Ex. A at 07:25-07:29.  During the entirety of its brief appearance, the Mural is partially obscured by a pickup truck parked in front of it, by a second parked vehicle, and by Ms. Snow, who is the scene's focus.  *See* Ex. A at 07:25-07:29.

*Bushwick* premiered at the Sundance Film Festival in January 2017, and was released to theaters in August 2017.  Compl. ¶ 15.  Plaintiff alleges that XYZ Films produced *Bushwick* and that the other Defendants distributed the film through their respective services.  *Id.* ¶ 13.

Plaintiffs filed suit on October 8, 2018.  *See* Dkt. 1.  Following service, Defendants filed a pre-motion conference letter about their planned motion to dismiss.  Dkts. 17, 24, 27.  After Plaintiffs failed to file a timely response, this Court ordered them to do so, and they responded on November 21, 2018.  Dkt. 21.  On January 9, 2019, the Court held a lengthy pre-motion conference, during which the parties watched the portion of the film at issue multiple times.  *See* Berlin Decl., Ex. B ("Tr.") at 12:17 – 23:8.  The Court advised that its "inclination here, based on having looked at this, is that it is ripe for dismissal on a motion to dismiss."  *Id.* at 23:5-8

---

[2] Courts routinely consider on a motion to dismiss materials, like the film, that are incorporated by reference in the Complaint, *see* Compl. ¶ 13 & Ex. 2 (screenshot of film), and are central to the claim, *see, e.g.*, *Eng v. Baldwin*, 2014 WL 2465763, at *1 n.1 (E.D.N.Y. May 30, 2014); *Blakeman v. The Walt Disney Co.*, 613 F. Supp. 2d 288, 297-98 (E.D.N.Y. 2009).

(addressing copyright claim); *see also id.* at 37:3-16 (same on false endorsement claim); *id.* at 43:1 – 46:11 (same on misappropriation claim).  The Court directed the parties to proceed to briefing, in part so that Plaintiffs could "take the court's questions head on." *Id.* at 50:3-11.

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Santora v. Capio Partners, LLC*, 2017 WL 4334128, at *1 (E.D.N.Y. Sept. 28, 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (additional marks and citation omitted)).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [plaintiff's claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### I.

### PLAINTIFF LAROE FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

**A.     The Background Use of the Mural Was *De Minimis* and Therefore Not Actionable**

"The legal maxim '*de minimis non curat lex*' – 'the law does not concern itself with trifles' – applies in the copyright context. . . .  [I]f the copying is *de minimis* and so 'trivial' as to fall below the quantitative threshold of substantial similarity, the copying is not actionable." *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 632 (S.D.N.Y. 2008) (citations omitted); *see also, e.g.*, *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998) ("where the unauthorized use of a copyrighted work is *de minimis*, no cause of action

will lie for copyright infringement").  Here, LaRoe's infringement claim fails because Defendants' use of the Mural was so trivial as to be not actionable.

To bring a claim for copyright infringement, a plaintiff must allege that "substantial similarity" exists between her work and that of the defendant.  *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 139-40 (2d Cir. 1992).  Substantial similarity "requires that the copying [be] quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred."  *Hudson v. Universal Pictures Corp.*, 2004 WL 1205762, at *2 (E.D.N.Y. Apr. 29, 2004) (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 138 (2d Cir. 1988)), *aff'd sub nom. Hudson v. Imagine Entm't Corp.*, 128 F. App'x 178 (2d Cir. 2005).  Trivial or *de minimis* copying "fall[s] below" this quantitative threshold and is thus non-actionable.  *Sandoval,* 147 F.3d at 217; *see also Davis v. The Gap, Inc.*, 246 F.3d 152, 172 (2d Cir. 2001) ("The *de minimis* doctrine essentially provides that where unauthorized copying is sufficiently trivial, the law will not impose legal consequences." (citation omitted)).

In deciding whether the quantitative threshold of substantial similarity is met, "courts often look to the amount of the copyrighted work that was copied, as well as (in cases involving visual works), the observability of the copyrighted work in the allegedly infringing work."  *Sandoval*, 147 F.3d at 217.  Although the primary factor is "the length of time the copyrighted work is observable," courts also consider other "factors such as focus, lighting, camera angles, and prominence."  *Gottlieb Dev.*, 590 F. Supp. 2d at 632.  "Observability" is not merely whether the work can be seen, but "is determined by the length of time the copyrighted work appears in the allegedly infringing work, and its prominence in that work."  *Sandoval*, 147 F.3d at 217.

Where the works in question are either attached to a plaintiff's complaint or incorporated by reference therein, "it is entirely appropriate for the district court to consider the similarity

between those works in connection with a motion to dismiss, because the court has before it all

that is necessary in order to make such an evaluation." *Peter F. Gaito Architecture*, 602 F.3d at

64. "If, in making that evaluation, the district court determines that the two works are not

substantially similar as a matter of law, the district court can properly conclude that the plaintiff's

complaint, together with the works incorporated therein, do not plausibly give rise to an

entitlement to relief." *Id.* (internal marks and citations omitted). As a result, courts in this

Circuit have repeatedly granted motions to dismiss copyright claims where the use of the work

was so *de minimis* as to be nonactionable. *See Gottlieb*, 590 F. Supp. 2d at 632 (dismissing

claim as implausible, because use – in which plaintiff's work appeared "sporadically, for no

more than a few seconds at a time" over the course of a scene that lasts "three-and-a-half

minutes" – was *de minimis* as a matter of law); *Rudkowski v. MIC Network, Inc.*, 2018 WL

1801307, at *4-5 (S.D.N.Y. Mar. 23, 2018) (granting motion to dismiss where use of screen shot

of plaintiff's video was *de minimis*); *Gayle v. Home Box Office, Inc.*, 2018 WL 2059657, at *2-4

(S.D.N.Y. May 1, 2018) (dismissing claim involving two to three second use of street art in

background of scene as "border[ing] on frivolous"), *appeal dismissed*, 2018 WL 6048022, at *1

(2d Cir. Sept. 13, 2018) (summarily dismissing appeal as "lack[ing] an arguable basis either in

law or in fact").

The use of the Mural in *Bushwick* was comparably trivial. The Mural appears for roughly

3.5 seconds out of a full-length, 93 minute feature film (or .063% of the film's running time).

*See* Ex. A at 07:25-07:29. While LaRoe alleges that the Mural "is presented in a full-screen shot,

in perfect focus and unobstructed to the viewer," Compl. ¶ 13, and doubled down on those

assertions during the pre-motion conference, Tr. at 8:16-20, the film itself, which governs, shows

that her description is inaccurate. *See* note 1 *supra*. In fact, as the screenshot attached to her

Complaint confirms, Compl. Ex. 2, and as the Court repeatedly observed during the conference, Tr. at 8:10-13, 15:20 – 16:9, 20:20 – 21:7, the Mural appears only in the background while obscured by parked vehicles as well as the lead actress who runs across the frame and is its focus, *see* Ex. A at 07:25-07:29.  The Mural is not given any special prominence:  it is only one of a number of murals shown fleetingly in the background, it is not mentioned by any of the film's characters, and it bears no relation to the plot.  *Id.* at 06:54-07:29; *see also* Compl. ¶ 18 (admitting that murals cover "approximately 75% of the available walls in that neighborhood").

Courts in this Circuit have found similar uses to be *de minimis*, including where the use is more extensive than it is here.  For example, in *Gottlieb*, the court held that multiple appearances of the plaintiff's artwork in the film *What Women Want*, each for "a few seconds at a time" over the course of a three-and-a-half-minute scene, was *de minimis*.  590 F. Supp. 2d at 630, 632-33.  Like the Mural here, the allegedly infringed work in *Gottlieb* was "always in the background; it is never seen in the foreground"; it "never appears by itself or in a close-up"; and it "is never mentioned and plays no role in the plot."  *Id.* at 632.  And, like the Mural, the work in *Gottlieb* was "almost always partially obscured" by the actor Mel Gibson and pieces of furniture placed in front of it, such that it was "fully visible for only a few seconds during the entire scene."  *Id.*

Similarly, in *Gayle*, the court dismissed a copyright infringement claim "premised on a fleeting shot of barely visible graffiti . . . in the background of a single scene."  2018 WL 2059657, at *3.  The court noted that (1) "[t]he overall scene is brief, and the graffiti at issue appears on screen for no more than two to three seconds," (2) "the graffiti is never pictured by itself or in a close-up, and it plays absolutely no role in the plot," and (3) "the camera is focused on the actress in the foreground."  *Id.* (citation omitted).  The District Court found that the claims "border on frivolous," *id.*, and the Second Circuit summarily dismissed plaintiff's appeal as

"lack[ing] an arguable basis either in law or in fact," *Gayle*, 2018 WL 6048022, at \*1.  Other

courts have reached the same conclusion.  *See, e.g.*, *Straus v. DVC Worldwide, Inc.*, 484 F. Supp.

2d 620, 641 (S.D. Tex. 2007) (finding unauthorized use of photograph of Arnold Palmer for

"two to three seconds at the end of the thirty-second commercial" not actionable); *Gordon v.*

*Nextel Commc'ns*, 345 F.3d 922, 924 (6th Cir. 2003) (2.3 second display of plaintiff's drawing

was *de minimis* and "falls below the quantitative threshold of actionable copying").

In her opposition to Defendants' pre-motion letter, Dkt. 21 at 1, LaRoe relied on two

cases, *Ringgold v. Black Entertainment Television*, 126 F.3d 70 (2d Cir. 2001), and *Hirsch v.*

*CBS Broadcasting Inc.*, 2017 WL 3393845 (S.D.N.Y. Aug 4, 2017), to argue that "qualitative,

highly observable infringements of this nature are actionable."  Unlike this case, involving a

single 3.5 second use of the Mural, *Ringgold* involved a poster "shown, in whole or in part, nine

times during a five-minute scene at the end of [an] episode.  The poster (or a portion thereof) was

seen for 1.86 to 4.16 seconds at a time, for a total of 26.75 seconds."  *Gottlieb*, 590 F. Supp. 2d

at 633 (distinguishing *Ringgold* on this basis).  Likewise, in *Hirsch*, the photograph at issue was

far more prominent, occupying the screen as the viewer's primary focus, not obscured by an

object or an actor as is the case here.  *See Hirsch*, 2017 WL 3393845, at \*4-5 (distinguishing a

"'substantially full-screen' display of an image" from cases, like *Gottlieb*, in which "infringing

material 'is always in the background,' 'never appears by itself or in a close-up,' is either 'out of

focus or obscured'" (citations omitted)).

Moreover, LaRoe's speculation that the Mural was "intentionally selected for the opening

sequence of the Movie" in order to "visually locate[] the viewer at the Jefferson Street subway

station in Bushwick" or to be "thematically relevant to the Movie," Compl. ¶ 14, would not, even

if true, save her claim.  Where a use is *de minimis*, "the copying will not be actionable, even

7

where the work was chosen to be in the background for some thematic relevance." *Gayle*, 2018 WL 2059657, at *3 (citation omitted); *accord Gottlieb*, 590 F. Supp. 2d at 634.[3]  The Mural's passing appearance in the background was unquestionably *de minimis*, and LaRoe's copyright infringement claim should therefore be dismissed.

**B.     Alternatively, The Display of the Mural in *Bushwick* Was a Nonactionable Fair Use**

LaRoe alleges that the Mural's use is not *de minimis*, but is instead prominent and significant enough both to "visually locate[ ] the viewer at the Jefferson Street subway station," Compl. ¶ 14, and to contrast the film's violence with the Mural's "messages of environmental justice and human rights," *id.* ¶ 11.  Assuming *arguendo* that she were correct, then that use would be transformative and thus a nonactionable fair use.  *See* 17 U.S.C. § 107 ("the fair use of a copyrighted work . . . is not an infringement of copyright").[4]

The Copyright Act enumerates four non-exclusive factors in analyzing fair use: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use on the market for the original.  *Id.* The "ultimate test of fair use, therefore, is whether the copyright law's goal of 'promoting the

---

[3] In any event, as a *New Yorker* article cited repeatedly in the Complaint makes clear, Compl. ¶¶ 15, 17, Plaintiffs' allegation that the Mural was intentionally selected for inclusion in the film is unfounded.  The film's creators first came up with the idea for *Bushwick* and plotted the protagonist's route through the neighborhood in 2009, some five years before the Mural was completed in 2014.  *See* Don Steinberg, *A Second Civil War in 'Bushwick,'* The New Yorker (Oct. 23, 2017), https://www.newyorker.com/magazine/2017/10/23/a-second-civil-war-in-bushwick; Compl. Ex. 1 (reciting first publication date of Mural as September 14, 2014).

[4] Defendants do not disagree with the Court's passing observation at the pre-motion conference that their *de minimis* use argument seems like a better fit for this case than an argument that assumes that the Mural's use is prominent enough to be transformative.  *See* Tr. at 19:19-24.  Accordingly, in light of the Court's question about whether to defer briefing on those issues "that may not be necessary," *id.* at 50:12 – 51:11, following the pre-motion conference undersigned counsel proposed to LaRoe's counsel (Ms. Daniels) that the parties defer briefing on fair use.  Plaintiff refused.  Defendants have therefore included a detailed analysis of the fair use factors should the Court conclude that the use was not *de minimis* and needs to adjudicate fair use as alternative basis for dismissal of LaRoe's copyright infringement claim.

Progress of Science and useful Arts' . . . would be better served by allowing the use than by preventing it." *Castle Rock*, 150 F.3d at 141 (alterations, internal marks, and citations omitted). As shown below, each of these factors weigh decisively in Defendants' favor, and courts in this Circuit have not hesitated to grant Rule 12(b)(6) motions on fair use grounds where, as here, a comparison of the two works at issue is sufficient to decide the question. *See Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d 497, 504-05 (S.D.N.Y. 2017) (collecting cases), *aff'd*, 729 F. App'x 131 (2d Cir. 2018).

**1.  The Purpose and Character of the Use Strongly Favors a Finding of Fair Use**

The first statutory factor, the purpose and character of the use, is "[t]he heart of the fair use inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006) (quoting *Davis*, 246 F.3d at 174).  The most important part of this analysis, and indeed of the entire fair use inquiry, is whether the secondary use was transformative.  *See Bill Graham Archives v. Dorling Kindersely Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006).  A work is 'transformative' when the new work does not "merely supersede[ ] the objects of the original creation" but "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (internal marks and citations omitted).  "If the secondary use adds value to the original – if [the original] is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings – this is the very type of activity that the fair use doctrine intends to protect for the enrichment of society." *Castle Rock*, 150 F.3d at 142 (citation omitted).  "For a use to be fair, it 'must be productive and must employ the quoted matter in a different manner or for a different purpose from the original.'" *Cariou v. Prince*, 714 F.3d 694, 706 (2d Cir. 2013) (quoting Pierre N. Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1111 (1990)).

While Defendants assert (and the film confirms) that the use of the Mural is fleeting and trivial, LaRoe expressly pleads that the brief depiction of the Mural was used substantively in the film both to "visually locate[ ] the viewer at the Jefferson Street subway station," Compl. ¶ 14, and to contrast her work's "political nature," as well as its "messages of environmental justice and human rights," with *Bushwick*'s violent themes, *id.* ¶ 11; *see also id.* ¶ 14 (it "contains the word 'revolution,' which is thematically relevant to the Movie – but for very different reasons than intended by the artist and her subject"). Putting aside that (a) the subway station itself is what "locates the viewer" and (b) the Mural's text supposedly imparting a contrasting political message is largely obscured, *see* Compl. Ex. 2, if the Mural were in fact used as LaRoe alleges, that use would, by definition, be transformative. Using a visual image "in furtherance of the creation of a distinct visual aesthetic and overall mood for the moviegoer watching [a] scene" is transformative. *Sandoval v. New Line Cinema Corp.*, 973 F. Supp. 409, 413 (S.D.N.Y. 1997). In *Sandoval*, for example, the plaintiff's photographs were used to create a specific mood in the apartment of a serial killer character in the movie *Seven*. *Id.* The Court had no difficulty concluding that the use was transformative and thus a fair use. *Id.*; *see also Italian Book Corp. v. ABC, Inc.*, 458 F. Supp. 65, 68, 70 (S.D.N.Y. 1978) (broadcast of music played by band during festival was fair use, as it "add[ed] to the atmosphere of what was happening at the moment").[5]

---

[5] Plaintiff contends that the use cannot be transformative because "[n]o new insights or understandings of the [Mural] are offered in the Movie," Compl. ¶ 27, but "[t]he law imposes no requirement that a work comment on the original or its author in order to be considered transformative." *Cairou*, 714 F.3d at 706. The question is whether it is a new and different use. As a result, this case is unlike *TCA Television Corp. v. McCollum*, 839 F.3d 168, 182-83 (2d Cir. 2016) (cited in Plaintiffs' pre-motion conference letter, Dkt. 21 at 2), where the Court found that the inclusion of an Abbott and Costello comedy routine was not a fair use because it was used "extensively for its *original* comedic effect" (emphases added). LaRoe does not contend she intended the Mural to situate anyone in Bushwick or to depict how a street actually looks, as she alleges the film does. Compl. ¶ 14. Rather she complains that her message about revolution differs from that of the filmmakers, but that is the *sin qua non* of a fair use. *See id.* ¶¶ 11, 14.

That *Bushwick*'s producers sought to profit from their work does not alter this analysis. "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579. Courts in this Circuit repeatedly have deemed the commercial nature of a work largely irrelevant to the fair use analysis where a work is transformative. *See, e.g.*, *Authors Guild v. Google, Inc.*, 804 F.3d 202, 219 (2d Cir. 2015) (commercial motivation of little significance where there was a "highly convincing transformative purpose, together with the absence of significant substitutive competition"), *cert. denied*, 136 S. Ct. 1658 (2016). If LaRoe were correct about the nature of Defendants' use, it would clearly be transformative. As a result, this element – the "heart of the inquiry" – weighs heavily in their favor.

### 2. The Nature of the Work Weighs in Favor of Fair Use

The second factor in the fair use analysis – the nature of the plaintiff's work – addresses "(1) whether the work is expressive or creative . . . , and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Blanch*, 467 F.3d at 256 (quoting 2 Howard B. Abrams, THE LAW OF COPYRIGHT § 15:52 (2006)). Here, the Mural was published – indeed, it was publicly displayed for all to see – so Defendants' use is "more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003); *see also Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 550-51 (1985); *Blanch*, 467 F.3d at 256. And, where, as here, the use is transformative, the fact that the work is creative is "of limited usefulness" in applying this factor. *Bill Graham Archives*, 448 F.3d at 612; *Blanch*, 467 F.3d at 257 (factor has "limited weight in our analysis" where defendants "used [the] work in a transformative manner"); *cf. Campbell*, 510 U.S. at 586 (second factor is rarely "likely to help much in separating the fair use sheep from the infringing goats in a parody case").

11

Thus, because the work's published nature favors Defendants and its creative nature does not favor either party, on balance this factor favors a finding of fair use.

### 3.   The Amount and Substantiality of the Portion Used Favors a Finding of Fair Use

As to the third factor, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107, courts consider not just the quantity used, but "whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Cariou*, 714 F.3d at 710 (quoting *Blanch*, 467 F.3d at 257).   The secondary use "'must be [permitted] to "conjure up" at least enough of the original' to fulfill its transformative purpose." *Id.* (quoting *Campbell*, 510 U.S. at 588; *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 114 (2d Cir. 1998)).   With respect to photographs and visual works, even copying an entire work "does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image." *Bill Graham Archives*, 448 F.3d at 613.

Here, the Mural is not displayed in full, but is obscured by both the actress running across it and two vehicles.   Moreover, crediting LaRoe's assertion that Defendants used the Mural to twist its message or to depict a particular corner in Bushwick, it was entirely appropriate to use a portion of the Mural in the scene's background "tailored to further [that] transformative purpose." *Id*.   The third factor thus weighs in favor of fair use.

### 4.   The Effect of the Use Upon the Potential Market Weighs in Favor of Fair Use

Finally, the fourth factor also weighs in favor of fair use because any suggestion that the film substitutes for the original Mural is beyond farcical.   A secondary use "usurps" the market "where the infringer's target audience and the nature of the infringing content is the same as the original." *Cariou*, 714 F.3d at 709.   In other words, "[t]he focus . . . is on whether defendants are offering a market substitute for the original." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 481 (2d Cir. 2004).   When conducting this analysis, "[t]he more transformative the secondary use, the

12

less likelihood that the secondary use substitutes for the original." *Cariou*, 714 F.3d at 709 (citation omitted); *Bill Graham Archives*, 448 F.3d at 614-15 (secondary use does not affect market for original where it is "transformatively different from their original expressive purpose"); *Davis*, 246 F.3d at 175; *Castle Rock*, 150 F.3d at 145 n.11.  As discussed above, the substantive use alleged by LaRoe would be significantly transformative.  LaRoe also expressly pleads that the Mural and the film had very different target audiences, Compl. ¶¶ 14-16, and it would make no sense for anyone to purchase the film just to view the fleeting, obscured image of the Mural.  As a result, there is no effect on the market for LaRoe's work, and therefore this factor also strongly favors Defendants.

In sum, applying the four fair use factors, it is clear that "the copyright law's goal of promoting the Progress of Science and useful Arts would be better served by allowing [Defendants'] use than by preventing it." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg, LP*, 756 F.3d 73, 92 (2d Cir. 2014) (citations omitted).  Therefore, if not dismissed as a *de minimis* use, LaRoe's claim should be dismissed on fair use grounds.  Indeed, if the rule were otherwise, it would be virtually impossible to film outdoors in a place like New York City with buildings, murals, signs, billboards and the like appearing briefly in the background, without incurring copyright liability.  Neither the language of the Copyright Act, nor its underlying purpose of fostering the development of new creative works, contemplates such a result.[6]

---

[6] LaRoe claims that a passing comment by the filmmakers about licensing music (a very different use than the fleeting, background use of a public Mural) suggests they were "aware that they could not use other people's intellectual property – even briefly – without permission." Compl. ¶ 17.  Even if that somehow extended to the Mural, however, a "publisher's willingness to pay license fees for reproduction of images does not establish that the publisher may not, in the alternative, make fair use of those images." *Bill Graham Archives*, 448 F.3d at 615.

**C.      LaRoe Is Not Entitled to an Award of Statutory Damages or Attorney's Fees**

Even if LaRoe otherwise had a viable copyright infringement claim (she does not), the

Court should still dismiss her claim for statutory damages and attorney's fees because she did not

timely register her copyright in the Mural.  The Copyright Act itself provides that "*no award of*

*statutory damages or of attorney's fees*, as provided by sections 504 and 505, shall be made for

. . . any infringement of copyright *commenced* after first publication of the work and *before the*

*effective date of its registration*."  17 U.S.C. § 412(2) (emphasis added).

This provision applies to any "infringement occurring after registration if that

infringement is part of an ongoing series of infringing acts and the first act occurred before

registration."  *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158 (2d Cir. 2007).  Thus, "[w]here a

series of acts constituting continuing infringement is alleged, the infringement 'commences' for

purposes of determining eligibility for statutory damages and attorney's fees and costs 'when the

first act of infringement in a series of on-going discrete infringements occurs.'"  *U2 Home*

*Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, 2008 WL 3906889, at *14 (S.D.N.Y. Aug. 21,

2008) (citations omitted).  As one court recently explained:

> Courts in this district have held that Section 412 of the Copyright Act imposes a
> bright-line rule that precludes recovery of statutory damages and attorneys' fees
> where the first act of infringement in a series of ongoing infringements occurred
> prior to the work's copyright registration, finding such a bright-line rule
> preferable to case-by-case analyses of whether a series of infringements 'has
> stopped sufficiently such that the restart constitutes a new set of infringements.'

*Solid Oak Sketches, LLC v. 2K Games, Inc.*, 2016 WL 4126543, at *2 (S.D.N.Y. Aug. 2, 2016)

(collecting cases); *see also Irwin v. ZDF Enters. GmbH*, 2006 WL 374960, at *6 (S.D.N.Y. Feb.

16, 2006) (finding that new television program was continuation of series of infringements and

dismissing claim for statutory damages and attorney's fees); *Fioranelli v. CBS Broad. Inc.*, 232

F. Supp. 3d 531, 542-43 (S.D.N.Y. 2017) (granting motion to dismiss statutory damages claim on this basis).[7]

LaRoe's Mural was first published on September 14, 2014, *see* Compl. Ex. 1, and the effective date of the copyright registration on which she relies is March 16, 2017, *id.* ¶ 22 & Ex. 1. *Bushwick* premiered at the Sundance Film Festival in January 2017, such that the alleged infringements at issue commenced after first publication and before registration. *Id.* ¶ 15. Thus, the plain terms of Section 412 bar LaRoe's claim for statutory damages and attorney's fees.

LaRoe cannot avoid this result by arguing, as she did in her opposition to the pre-motion letter, Dkt. 21 at 2, that she can recover statutory damages from the online distributors of *Bushwick* – Amazon, Apple, Google, and Netflix – because only XYZ Films' infringement began before the date of registration. Under settled law, the distributors' dissemination of the film is merely a continuation of XYZ Films' alleged infringement and not independently eligible for an award of statutory damages. "Because a statutory damages award covers 'all infringements involved in the action . . . for which' infringers are liable," courts "treat the earliest date of infringement by *any* participant in a line of related copyright violations as the date of commencement." *Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 331 (4th Cir. 2007). For this reason, "a copyright owner may not obtain statutory damages from a licensee liable jointly and severally with a licensor when the licensor's first infringing act occurred before registration and was part of the same line of related infringements that included the licensee's offending act." *Id.* at 331; *see also Fischer v. Forrest*, 2017 WL 2992663, at *14-15 (S.D.N.Y. July 14, 2017) (applying same rule even without the "formal licensor-licensee relationship

---

[7] LaRoe's pre-motion conference letter mischaracterized the holding in *Fioranelli*, Dkt. 21 at 2. While the court found that it was premature to decide whether fees could ultimately be awarded under its *equitable* powers should the facts warrant, it in fact dismissed the *statutory* claim. 232 F. Supp. 3d at 543.

present in *Bouchat*"), *report & recommendation adopted*, 286 F. Supp. 3d 590 (S.D.N.Y. 2018);

*Love v. City of New York*, 1989 WL 140578, at *2 (S.D.N.Y. Nov. 17, 1989) (barring statutory

damages and attorney's fees where "sale of an infringing book by one book store before

registration" and "sale of the same book by another after registration" were deemed "same

infringement"); 6 William F. Patry, PATRY ON COPYRIGHT § 22:201.25 (2018) (collecting cases).

Because LaRoe cannot obtain statutory damages or attorney's fees under the Copyright Act, her

request for such relief should be dismissed.

## II.

### NEITHER PLAINTIFF STATES A CLAIM
### FOR FALSE ENDORSEMENT

**A.    LaRoe's Claim Is Duplicative of Her Copyright Claim and Precluded Under *Dastar***

LaRoe's false endorsement claim – which simply seeks to recast in a different form her

claim that her work was used without permission – fails at the outset because "[t]he right to copy

creative works, with or without attribution, is the domain of copyright, not of trademark or unfair

competition." *Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F. Supp. 2d 259, 263 (S.D.N.Y.

2005).  The Supreme Court ruled in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539

U.S. 23, 37 (2003), that the Lanham Act is designed to protect "the producer of . . . tangible

goods that are offered for sale, and not . . . the author of any idea, concept, or communication

embodied in those goods."  As a result, "[s]ince *Dastar*, Lanham Act claims arising from the

alleged copying of creative work have been 'clearly foreclosed.'" *Hudson v. Universal Studios,*

*Inc.*, 2008 WL 4701488, at *8 (S.D.N.Y. Oct. 23, 2008) (citation omitted), *aff'd*, 369 F. App'x

291 (2d Cir. 2010).  LaRoe's false endorsement claim is therefore barred.

**B.      Plaintiffs Fail To Plead Essential Elements of a False Endorsement Claim**

Even if not precluded, Plaintiffs have failed to plead a false endorsement claim under the

Lanham Act.  Plaintiffs must allege, among other things, that Defendants misused Plaintiffs'

marks as trademarks and made a false or misleading representation that "is likely to cause

consumer confusion as to the origin, sponsorship, or approval of the goods and services." *Naked*

*Cowboy v. CBS*, 844 F. Supp. 2d 510, 516 (S.D.N.Y. 2012) (citation omitted).  Plaintiffs cannot

do so.

As an initial matter, Plaintiffs' claimed "marks" – LaRoe's "tag" and Blaney's name and

image, *see* Compl. ¶ 33 – were simply not used "to identify and distinguish" the source of the

film.  *See* 15 U.S.C. § 1127 (defining a trademark).  To the contrary, the producers of *Bushwick*

are clearly identified in the film's opening credits, *see* Ex. A at 00:11-00:40, and it is fanciful to

suggest that the fleeting, partially-obscured appearance of the Mural in the background of a

single scene somehow identifies Plaintiffs as the source of the film.  *See Naked Cowboy*, 844 F.

Supp. 2d at 515-16 (finding that source of television episode was clearly identified by display of

CBS's eye logo rather than appearance of character purportedly based on plaintiff).

There is similarly no likelihood of confusion as to endorsement.  On a motion to dismiss,

"courts have disposed of claims [like Plaintiffs'] where simply looking at the work itself, and the

context in which it appears, demonstrates how implausible it is that a viewer will be confused

into believing that the plaintiff endorsed the defendant's work." *Louis Vuitton Malletier S.A. v.*

*Warner Bros. Entm't*, 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012) (granting Rule 12(b)(6) motion

where no viewer would believe that fashion company approved use of travel bag in film).  Courts

that have considered similar appearances of a plaintiff's work "in motion pictures routinely fail

to find any likelihood of confusion."  *Gottlieb*, 590 F. Supp. 2d at 635 (rejecting "mere

theoretical possibilities of confusion" from "*de minimis* situations" and dismissing claim where

"no viewer of the Film would consider whether Paramount sponsored the pinball machine or Gottlieb [the pinball machine creator] sponsored the Film" (citation omitted)); *Gayle*, 2018 WL 2059657, at *3 (dismissing claim where as a matter of law "no viewer of the episode would consider whether HBO sponsored the graffiti or [plaintiff] sponsored the episode" (internal marks and citation omitted)).

It is simply not plausible that the Mural's brief appearance in the film would confuse an ordinarily prudent consumer about either Plaintiff's sponsorship or affiliation with *Bushwick*. The Mural appears in the background of a single scene for about 3.5 seconds when a character happens to run in front of it.  Plaintiff LaRoe's asserted trademark, her "tag," *see* Compl. ¶ 33, is covered by Ms. Snow's body or is off screen for the majority of the time the Mural is shown and, where visible, is miniscule in size.  Thus the impression created is not that Plaintiffs endorsed the film, but rather than the Mural simply happened to be in the background on the street where the film was shot.  Plaintiffs' false endorsement claim under the Lanham Act should therefore be dismissed.[8]

Plaintiffs' state law claims fail for the same reason.  "The standards for bringing a claim under § 43(a) of the Lanham Act are substantially the same as those applied to claims brought under the New York common law for unfair competition and . . . [Section] 350 of the New York General Business Law."  *Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 800 (S.D.N.Y. 1997); *see also Gottlieb*, 590 F. Supp. 2d at 636-37 (same); Tr. at 42:11-15 (plaintiffs' concession that "the elements are the same" and that "if the endorsement claim fails, then [the]

---

[8] Plaintiffs also claim injury to their reputations because *Bushwick*'s "plot is antithetical to the message of peace that forms the basis of [their] work."  Compl. ¶ 16.  However, a plaintiff "may not rely on purely dignitary, non-commercial harm that might arise from being associated with defendants or defendants' products" when asserting a Lanham Act claim.  *Cecere v. R.J. Reynolds Tobacco Co.*, 1998 WL 665334, at *2 (S.D.N.Y. Sept. 22, 1998) (granting motion to dismiss arising out of advertisement for Camel cigarettes featuring plaintiffs' building).

GBL claim fails"). Moreover, "a plaintiff may state a claim under [Sections 349 and 350] only if it asserts consumer injury or harm to the public interest." *Perkins Sch. for the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319, 327 (E.D.N.Y. 2003) (internal marks and citation omitted). Such claims "are not cognizable . . . unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, 2015 WL 5008762, at *4 (S.D.N.Y. Aug. 24, 2015) (internal marks and citation omitted). Plaintiffs make no such allegation here, and could not credibly do so. *See* Tr. at 41:15 – 42:10 (conceding no injury to public beyond "consumer confusion . . . about an endorsement"). In light of these requirements, one court in this District recently noted that it could "find no case in which a claim of false endorsement has been allowed to proceed under Section 349" of the General Business Law. *Mayes v. Summit Entm't Corp.*, 287 F. Supp. 3d 200, 211 (E.D.N.Y. 2018); *see also Krasnyi Oktyabr, Inc. v. Trilini Imports*, 2007 WL 1017620, at *12 (E.D.N.Y. Mar. 30, 2007) (explaining that the "standards for deceptive business practices under section 349 of the General Business Law are substantively identical to those for false advertising under section 350") (citation omitted).

Because Plaintiffs have not met the basic pleading requirements for a false endorsement claim under either federal or state law, this cause of action should be dismissed.

## C.     The First Amendment Also Precludes Plaintiffs' False Endorsement Claim

Even if Plaintiffs had otherwise pled the required elements of a false endorsement claim (which they did not), they cannot overcome the First Amendment's significant limitations on Lanham Act and similar state law claims targeting artistic works. Plaintiffs seek to prevent the use of the Mural in *Bushwick* because they do not like what the film has to say – "they find the subject matter of the Movie abhorrent and antithetical to their advocacy for peace." Compl. ¶ 33. The law is clear, however, that trademarks and analogous rights "do not entitle the owner to

quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view." *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 29 (1st Cir. 1987).  "To prevent filmmakers, novelists, painters and political satirists from including trademarks in their works is to cordon off an important part of modern culture from public discourse." *Girl Scouts of USA v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 808 F. Supp. 1112, 1119 (S.D.N.Y. 1992) (citation omitted), *aff'd*, 996 F.2d 1477 (2d Cir. 1993).  Therefore, when plaintiff's material appears as part of an expressive work "without any overt indication of authorship or endorsement," any risk that such use "might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression, *and the Lanham Act is not applicable*."  *Rogers v. Grimaldi*, 875 F.2d 994, 999-1000 (2d Cir. 1989) (emphasis added); *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989) (holding that the *Rogers* "approach is generally applicable to Lanham Act claims against works of artistic expression").

In *Rogers*, the Court rejected false endorsement claims by Ginger Rogers, even though they arose from the use of her name in the *title* of a film, *see* 875 F.2d at 999 – a far cry from the momentary, background use of a mural.  *See* Compl. Ex. 2.  Courts applying *Rogers* recognize that, to overcome the First Amendment protection, an allegation of confusion must be "particularly compelling."  *Louis Vuitton*, 868 F. Supp. 2d at 182-85 (granting Rule 12(b)(6) motion under *Rogers*).  Here, not only is there is no possibility of consumer confusion, let alone a compelling claim, but including the Mural in a film "that depicts a scene in which [it] actually exists serves the artistically relevant purpose of accurately depicting that scene," and is thus protected.  *N.Y. Racing Ass'n v. Perlmutter Publ'g, Inc.*, 1996 WL 465298, at *4 (N.D.N.Y. July 19, 1996) (finding, under *Rogers*, that First Amendment barred imposition of liability for

paintings accurately depicting racetrack).  The same analysis dooms plaintiffs' state-law claims.

*Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F. Supp. 267, 282 (S.D.N.Y. 1992) ("[T]he

same First Amendment considerations that limit a cause of action under the Lanham Act apply

also to a cause of action under New York law.").

    As a result, even if Plaintiffs could otherwise properly plead the elements of this claim,

the First Amendment limitations on such claims compel its dismissal.

## III.

## PLAINTIFF BLANEY FAILS TO STATE A CLAIM FOR MISAPPROPRIATION OF HER RIGHT OF PUBLICITY

### A.    Blaney's Misappropriation Claim Is Barred by the Statute of Limitations

    While Blaney pleads her misappropriation claim alternately under Sections 50-51 of the

New York Civil Rights Law, the British Columbia Privacy Act, and Canadian common law, the

statute of limitations is governed by New York law.  A federal court sitting in diversity or

exercising supplemental jurisdiction applies the conflict-of-laws rules of the state in which it sits.

*Rogers*, 875 F.2d at 1002.  "Under New York's 'borrowing statute,' a case filed by a non-

resident plaintiff requires application of the shorter statute of limitations period, as well as all

applicable tolling provisions, provided by either New York or the state where the cause of action

accrued."  *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) (citing CPLR

§ 202).  The statute of limitations for misappropriation claims in New York is one year.  CPLR

§ 215(3).  Under the single publication rule, that one-year period commences on the date of first

publication, *see Nussenzweig v. diCorcia*, 9 N.Y.3d 184, 188 (2007), or, in the case of a film,

when it is first disseminated, *see Duncan v. Universal Music Grp. Inc.*, 2012 WL 1965398, at *3

(E.D.N.Y. May 31, 2012).  Blaney expressly alleges that *Bushwick* premiered in January 2017

and was released to additional theaters in August 2017.  Compl. ¶ 15.  Her Complaint was not

filed until October 2018, more than a year after either date and, as such, her claim is time-barred.

Blaney claimed in her opposition to Defendants' pre-motion conference letter that the

statute of limitations should be tolled because she is a minor.  Dkt. 21 at 3.  However, Blaney

claims to be an *emancipated* minor – if she were not, she could not sue at all without her

guardian appearing.  Compl. ¶ 5.  Although this question is rarely litigated, a California decision

is instructive:  "[o]nce emancipated, a minor is under no legal disability with respect to bringing

his or her own claims," and the minor tolling provision does not apply.  *W. Shield Investigations

& Sec. Consultants v. Super. Ct.*, 82 Cal. App. 4th 935, 949-50 (Cal. Ct. App. 2000).  The same

is true here:  Blaney claims she is entitled to sue as an adult, and must therefore be treated like an

adult, including the obligation to assert her claims in a timely manner.

**B.  Because Blaney's Claim is Based on an Artistic Use, it Fails as a Matter of Law**

Blaney's claim fails for the independent reason that misappropriation claims are strictly

limited to advertising or trade uses, and not artistic uses.  Sections 50 and 51 of the Civil Rights

Law "prohibit the use of pictures, names or portraits 'for advertising purposes or for the purposes

of trade' only, and nothing more."  *Finger v. Omni Publ'ns Int'l, Ltd.*, 77 N.Y.2d 138, 141

(1990) (citation omitted).  Even if created to make a profit, "works of fiction do not fall within

the narrow scope of the statutory definitions of 'advertising' or 'trade.'"  *Costanza v. Seinfeld*,

279 A.D.2d 255, 255 (1st Dep't 2001) (citation omitted).  Courts thus routinely grant motions to

dismiss where a person's likeness is used in a feature film, rather than for advertising or trade

purposes.  *See, e.g.*, *Duncan*, 2012 WL 1965398, at *3 ("use of [plaintiff's] image in the movies

*Get Rich or Die Tryin'* and *13* fall outside the scope of the protections of Section 51"); *Lemerond

v. Twentieth Century Fox Film Corp.*, 2008 WL 918579, at *2-3 (S.D.N.Y Mar. 31, 2008)

(dismissing claim based on appearance of plaintiff in the film *Borat*).[9]  Although not justiciable here, *see, e.g.*, British Columbia Privacy Act, R.S.B.C. 1996, chap. 373, § 4 (requiring all claims under British of Columbia Act to be heard in British Columbia courts), the same is true of Canadian law, on which Blaney also purports to rely.  *See, e.g.*, *id.* § 3(2) (British Columbia Act applies only to use "for the purposes of advertising or promoting the sale of, or other trading in, property or services"); *Wiseau Studio, LLC v. Harper*, 2017 ONSC 6535 ¶ 107 (same under Canadian common law).

Moreover, to rule otherwise would violate the First Amendment.  "[P]ure First Amendment speech in the form of artistic expression . . . deserves full protection, even against [another individual's] statutorily-protected privacy interests."  *Hoepker v. Kruger*, 200 F. Supp. 2d 340, 350 (S.D.N.Y. 2002).  The use of a plaintiff's name or likeness in a work of art like *Bushwick*, therefore, falls outside the scope of misappropriation law, regardless of its source.  *Lohan v. Perez*, 924 F. Supp. 2d 447, 454 (E.D.N.Y. 2013); *see also Man v. Warner Bros., Inc.*, 317 F. Supp. 50, 52 (S.D.N.Y. 1970).

---

[9] In her pre-motion conference letter, Dkt. 21 at 3, Blaney relied on *Nieves v. Home Box Office, Inc.*, 11 Misc. 3d 1058(A) (Sup. Ct. N.Y. Cty. 2006), *aff'd*, 30 A.D.3d 1143 (1st Dep't 2006).  There, the court declined to dismiss a misappropriation claim where a reality TV show included pointed, derogatory comments on plaintiff's appearance, facts entirely missing here.  Since then, numerous courts have, without perceiving the need to address *Nieves*, dismissed misappropriation claims where the use was artistic, rather than for advertising or trade purposes.  *E.g.*, *Sondik v. Kimmel*, 131 A.D.3d 1041, 1042 (2d Dep't 2015); *Duncan*, 2012 WL 1965398, at *3; *Candelaria v. Spurlock*, 2008 WL 2640471, at *2-4 (E.D.N.Y. July 3, 2008); *Lemerond*, 2008 WL 918579, at *2-3.  Indeed, in the twelve years since *Nieves*, it appears to have been cited only once in passing, in an unpublished trial court decision involving an advertising campaign for an electric shaver, thus calling into serious question the validity of the *Nieves'* decision.  *See Simon v. Time Warner Cable, Inc.*, 2010 WL 4159526, at *5 (Sup. Ct. N.Y. Cty. Sept. 21, 2010) (citing *Nieves* only as authority for basic elements of misappropriation claim).

C.      **The *De Minimis* Use of Blaney's Image Is Not Actionable Misappropriation**

Finally, as under the Copyright Act, "'isolated' or 'fleeting and incidental uses' [of a plaintiff's likeness] are insufficient to establish liability" for misappropriation.  *Candelaria*, 2008 WL 2640471, at *2 (citations omitted) (collecting cases and granting motion to dismiss claim based on appearance of plaintiff in film for three to four seconds); *see also Bogie v. Rosenberg*, 705 F.3d 603, 616 (7th Cir. 2013) (applying New York law and granting motion to dismiss because sixteen second appearance of plaintiff in documentary was incidental and not actionable); *Preston v. Martin Bregman Prods., Inc.*, 765 F. Supp. 116, 118-21 (S.D.N.Y. 1991) (depiction of woman in film for 9 seconds, with her face visible for 4.5 seconds, not actionable); *Man*, 317 F. Supp. at 53 (use of plaintiff's 45 second performance "incidental," *de minimis* and nonactionable).  For the same reason LaRoe cannot sustain a copyright infringement claim, Blaney may not bring a misappropriation claim based on the 3.5 second, partly-obscured appearance of the Mural in the background of a scene.  Blaney's misappropriation claim should be dismissed for this reason as well.

**<u>CONCLUSION</u>**

For each of the foregoing reasons, Defendants respectfully request that this Court dismiss the complaint in its entirety with prejudice and grant such other relief as this Court deems appropriate.

Dated:  January 31, 2019                         Respectfully submitted,

**BALLARD SPAHR LLP**

By:   */s/ Seth D. Berlin*
        Seth D. Berlin (SB 7978)
        1909 K Street, NW, 12th Floor
        Washington, DC 20006
        Telephone: (202) 508-1122
        Facsimile: (202) 661-2299
        berlins@ballardspahr.com

Thomas B. Sullivan (TS 0694)
1675 Broadway, 19th Floor
New York, NY 10019
Telephone:  (212) 850-6139
Facsimile:  (212) 223-1942
sullivant@ballardspahr.com

*Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 31st day of January 2019, I directed that a true and correct

copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**

**MOTION TO DISMISS THE COMPLAINT** be served by Fedex Priority Overnight courier

upon the following counsel of record:

>
> Katherine J. Daniels, Esq.
> KATHERINE DANIELS LLC
> 60 June Road, Suite 202
> North Salem, NY 10560
>
> Stacey Richman, Esq.
> LAW OFFICE OF STACEY RICHMAN
> 2027 Williamsbridge Road
> Bronx, NY 10461
>
> *Attorneys for Plaintiffs*

Pursuant to Section III.B.2 of this Court's Individual Practices, I further certify that I

directed that a true and correct courtesy copy of this document be provided to Chambers at the

time of service upon the other parties.

I further certify that, once the motion is fully briefed, a true and correct copy of this

document shall be filed with the Court through the electronic filing system, which will

automatically serve electronic notice of the same on all counsel of record.


    /s/ Seth D. Berlin
       Seth D. Berlin