UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LMNOPI and TA'KAIYA BLANEY

                              Plaintiffs,

-against-

XYZ FILMS, LLC, NETFLIX, INC., AMAZON.COM, INC., APPLE, INC., AND GOOGLE LLC,

                              Defendants.

**MEMORANDUM AND ORDER**
18-CV-5610 (LDH) (VMS)

LaSHANN DeARCY HALL, United States District Judge:

    Plaintiffs LMNOPI and Ta'Kaiya Blaney bring the instant action against Defendants XYZ Films LLC ("XYZ Films"), Netflix LLC ("Netflix"), Amazon.com Inc. ("Amazon"), Apple Inc. ("Apple"), and Google LLC ("Google") asserting a claim for false endorsement under the Lanham Act, 15 U.S.C. § 1125. Separately, LMNOPI asserts a claim for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 106; and Blaney asserts a state-law claim for violation of a right of publicity under New York Civil Rights Law §§ 50-51. Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim.

## BACKGROUND[1]

    Blaney is an internationally-known "indigenous activist," actress, and singer-songwriter. (Complaint ("Compl.") ¶ 12, ECF No. 1.) LMNOPI is an artist and activist nationally recognized for producing works that evince her commitment to human rights and social justice.

---

[1] The following facts are taken from Plaintiffs' complaint and, unless otherwise indicated, are assumed to be true for purpose of the memorandum and order.

1

(*Id*. ¶ 11.) One such work, a mural (the "Mural") on a building located at the intersection of Wycoff and Starr Streets in Bushwick, Brooklyn depicts Blaney. (*Id*.) LMNOPI's "tag," or artistic signature, is affixed to the bottom of the Mural. (*Id*. ¶ 33.) In March 2017, LMNOPI obtained a certificate of copyright for the Mural. (*Id.* ¶ 22.)

In January 2018, Plaintiffs discovered that the Mural had appeared, without their permission, in *Bushwick* (the "Film"), a film produced by Defendant XYZ Films.[2] (*Id.* ¶ 13.) The Film premiered at the Sundance Film Festival in January 2017, was released in theaters in August 2017, and was later distributed for streaming by Defendants Netflix, Amazon, and Google. (*Id.* ¶¶ 13, 15.) Plaintiffs allege that the Mural appears for three-and-a-half seconds in the opening scene of the Film, in a full-screen shot, in perfect focus and unobstructed to the viewer. (*Id.* ¶ 13.) Plaintiffs further allege that the Mural "appears to have been intentionally selected for the opening sequence of the [Film] because it is one of the oldest, most well-recognized graffiti murals in Bushwick and visually locates the viewer at the Jefferson Street subway station in Bushwick." (*Id.* ¶ 14.) According to Plaintiffs, the Film's plot is antithetical to the message of peace that forms the bases of both Plaintiffs' work, and neither Plaintiff would have agreed to be associated with it. (*Id.* ¶ 16.) Also, according to Plaintiffs, Defendants intentionally avoided depicting other murals in the neighborhood during the Film's opening sequence. (*Id.* ¶ 18.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[2] Plaintiffs mistakenly refer to Defendant XYZ Films as Defendant XYZ Productions in paragraph 13 of the complaint, though Defendant XYZ Films is properly identified at all other times in the complaint and in the case caption.

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct.  *Id*.  While this standard requires more than a "sheer possibility" of defendants' liability, *id*., "[i]t is not the [c]ourt's function to weigh the evidence that might be presented at trial" on a motion to dismiss.  *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the [c]ourt must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the court must accept the factual allegations of the complaint as true."  *Id*. (citations omitted).

## DISCUSSION

### I. COPYRIGHT INFRINGEMENT

"The Copyright Act principally offers copyright protection for original works of authorship."  *Keeling v. Hars*, 809 F.3d 43, 47–48 (2d Cir. 2015); 17 U.S.C. § 102(a).  Specifically, the Copyright Act grants copyright holders several rights with respect to their copyrighted works, including the exclusive right to:  (1) reproduce the copyrighted work in copies; (2) prepare derivative works based on the copyrighted work; and (3) display the copyrighted work publicly.  *Perry v. Mary Ann Liebert, Inc.*, 765 F. App'x 470, 471 (2d Cir. 2019) (quoting 17 U.S.C. § 106).  To state a claim for copyright infringement, a plaintiff must demonstrate that (1) she has a valid copyright, (2) which the defendant copied, and (3) the defendant's copying was illegal because a substantial similarity exists between the allegedly infringing work and the protectable elements of the copyrighted work.  *Id*. at 471 (citing *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010)).

Defendants do not dispute that LMNOPI has a valid copyright in the Mural, or that they copied the Mural. Defendants maintain, rather, that LMNOPI has not established a sufficient similarity between the Mural and the Film to overcome Defendants' motion to dismiss. (Defs.' Mot. 3.) The Court agrees.[3]

To demonstrate a substantial similarity, LMNOPI must show "(i) that it was protected expression in the earlier work that was copied[,] and (ii) that the amount that was copied is 'more than de minimis.'" *Gottlieb*, 590 F. Supp. 2d at 631 (quoting *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003). Even where copying undeniably occurs, courts nevertheless consider whether the copying was extensive enough to warrant litigation. *Gottlieb Development*, 590 F. Supp. 2d at 631. That is, "*de minimis non curat lex*— the law does not concern itself with trifles." *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 632 (S.D.N.Y. 2008) (internal quotation marks omitted) (quoting *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997) ("*Ringgold II*"). Notably, substantial similarity cannot be found where the copying falls below a qualitative and quantitative threshold of observability. *Id.* While there are no bright line rules demarcating that threshold, courts are counseled to assess observability from the viewpoint of an "average lay observer" considering "the length of time the copyrighted work is observable, and other factors such as focus, lighting, camera angles, and prominence." *Gayle v. Home Box Office, Inc.*, No. 17-CV-5867, 2018 WL 2059657, at *2 (S.D.N.Y. May 1, 2018), *appeal dismissed*, No. 18-1536,

---

[3] LMNOPI incorrectly asserts that it would be premature to dismiss her copyright claim without discovery. (Pls.' Opp. 16-17.) However, "a district court may grant a motion to dismiss a copyright infringement claim if it determines that the two works are not substantially similar as a matter of law, [and it] can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not plausibly give rise to an entitlement to relief." *Perry v. Mary Ann Liebert, Inc.*, 765 F. App'x 470, 471-72 (2d Cir. 2019) (summary order) (quoting *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010); *see also Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F.Supp.2d 625, 631 (S.D.N.Y. 2008) (collecting cases where courts in this circuit have dismissed copyright infringement claims where a substantial similarity between the works was lacking.).

2018 WL 6048022 (2d Cir. Sept. 13, 2018), *cert. denied*, No. 18-9089, 2019 WL 2412932 (U.S. June 10, 2019).

Plaintiffs allege that "the focus, lighting, camera angles, and prominence disfavor a finding of *de minimis* infringement." (Compl. ¶ 26.) To this point, LMNOPI argues in Plaintiffs' opposition that the Mural's prominence combined with its cinematic clarity on screen, colorfulness, and distinctiveness is sufficient to meet the observability threshold necessary to demonstrate a substantial similarity between the works. (Pl.'s Opp. 6.) Not so. Indeed, Plaintiffs' description of the Mural as it appears in the Film is grossly overstated. According to the complaint, the Mural is "presented in a full-screen shot, in perfect focus, and unobstructed to the viewer for several seconds." (Compl. ¶ 13.) A review of the opening scene, however, reveals a work that is far less observable than Plaintiffs contend.[4] During its brief cameo, the Mural appears one time for a total of approximately three-and-a-half seconds of a film that runs 93 minutes. The Mural is at all times in the background. Obscuring the view of at least one-third of the Mural rests a red pickup truck. In addition, throughout the entirety of the three-and-a-half-second scene, an actress prominently positioned in the foreground runs about further obscuring the Mural. And, contrary to Plaintiffs' allegation that Defendants' intentionally avoided depicting other murals in the neighborhood, (Compl. ¶ 18), the Mural appears among several other murals during the Film's opening sequence. In addition, the focus of the scene in which the Mural appears is undeniably a female actress — not the Mural. The Mural is never referenced in the Film and is completely irrelevant to the Film's plot.

---

[4] *See Gaito*, 602 F.3d at 64 (internal citations and quotation marks omitted) ("It is well settled that in ruling on [a motion to dismiss], a district court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference. In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, any contrary allegations, conclusions or descriptions of the works contained in the pleadings.").

5

This case is not unlike *Gayle*, 2018 WL 2059657. In that case, the court dismissed the plaintiff's copyright action finding in part that "the overall scene [was] brief, and the graffiti at issue appeared on screen for no more than two or three seconds[,] . . . the graffiti [was] never pictured by itself . . . and [the graffiti] play[ed] absolutely no role in the plot." *Id*. at *3. Similarly, in *Gottlieb*, the court held that the plaintiff did not have a plausible claim of copyright infringement because the copyrighted material (1) appeared "sporadically; for no more than a few seconds at a time" during a scene that lasted only three-and-a-half minutes; (2) always appeared in the background; (3) never appeared alone; (4) was never mentioned; and (5) played no role in the movie's plot. 590 F. Supp. 2d at 632. These facts are virtually identical to those present here.

In an attempt to persuade the Court to deny the instant motion, LMNOPI directs the Court to several cases in which courts in this circuit have rejected a *de minimis* argument. (Pls. Opp. 4-5.) Defendants aptly distinguish those cases to reveal that LMNOPI's reliance on them is misplaced. (Defs.' Reply. 1-3.) *First*, in the cases cited by LMNOPI, the copyrighted works held prominent, unobstructed positions in the allegedly infringing works. Here, as discussed above, the Mural appears in the background of the scene and in a partially obscured view. *Second*, the Mural appears only briefly, whereas in the cases cited by LMNOPI, the copyrighted works appeared for greater portions of the entire challenged works. In *Hirsch*, the copyrighted material appeared for four seconds of a 1:44 minute video, or, in other words, 3.8% of the total time. *Hirsch v. Complex Media, Inc.*, No. 18 CV. 5488, 2018 WL 6985227 at *1 (S.D.N.Y. Dec. 10, 2018). Similarly, in *Twentieth Century Fox*, several clips of copyrighted material, each lasting less than three seconds, appeared in multiple short advertisements made by the

defendant.[5] *Twentieth Century Fox*, 155 F.Supp. 2d at 1. In *Ringgold*, copyrighted material appeared nine times, cumulatively for approximately twenty-seven seconds of a twenty-four-minute television episode. *Ringgold II*, 126 F.3d at 73. In *Dyer*, copyrighted material appeared for less than three seconds of a one-minute video. *Dyer v. V.P. Records Retail Outlet, Inc.*, No. 05-CV-6583, 2008 WL 2876494, at *2 (S.D.N.Y. July 24, 2008). The 3.5 second appearance of the Mural in a 93-minute film is simply not comparable.

Even if the use of the Mural in the Film could not be deemed *de minimis*, Defendants contend that its use was fair, warranting dismissal. (Defs.' Mot. 8.) While "[c]ourts most frequently address a proffered fair use defense at summary judgment," the Second Circuit "has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016). Such is the case here. When analyzing whether an alleged infringement is fair use, courts consider: "(1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use upon the potential market for the copyrighted work." *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013) (quoting 17 U.S.C. § 107).

In assessing the purpose and character of the use, courts must determine "whether and to what extent the new work is transformative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). A transformative use is "one that communicates something new and different from the original or expands its utility[.]" *Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir.

---

[5] Notably, the quote Plaintiffs rely on from *Twentieth Century Fox*, (Pls. Opp. 7), was made by the court in reference to the plaintiff's motion for a preliminary injunction, not in addressing the defendant's motion to dismiss as the defendants in that case did not move to dismiss the plaintiff's claim based on the defendant's alleged use of the plaintiff's video clips as Plaintiffs imply. *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 155 F. Supp. 2d 1, 22 (S.D.N.Y. 2001) ("[D]efendants do not move to dismiss the copyright claim based on their alleged use of the video clips[.]"), *aff'd in part and remanded*, 277 F.3d 253 (2d Cir. 2002).

2015); *see also Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014) ("[It is] one that serves a new and different function from the original work and is not a substitute for it."). "[T]he critical inquiry is whether the new work uses the copyrighted material itself for a purpose, or imbues it with a character, different from that for which it was created." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 180 (2d Cir. 2016); *see also Campbell*, 510 U.S. at 569 (internal citations, modifications and quotation marks omitted) (the proper inquiry is "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message[.]").

Plaintiffs' own allegations support a finding that the work is transformative. According to the complaint, as used in the Film, the Mural's purpose was to "locate the viewer at the Jefferson Street subway station in Bushwick." (Compl. ¶ 14.) And, as argued by Plaintiffs, the Mural's use in the Film is starkly different from the expressive function of the Mural as originally conceived to convey a message of peace. (Pls. Opp. 19; *see also Id*. 12-13 (indicating that the Mural's message of "environmental justice, peace and human rights is anti-thematically relevant to the Film.") Because the use of the Mural in the Film was transformative, the first factor weighs in favor of fair use.

Having found the use to be transformative, the other factors to be considered are of less significance.[6] *Campbell*, 510 U.S. at 579 ("[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of

---

[6] Courts in the Second Circuit have rarely ascribed significance to the nature of the work, especially when a use has already been deemed transformative. *See Hirsch*, 2018 WL 6985227, at *7 (collecting cases); *see also Authors Guild v. Google*, 804 F.3d at 220 ("The second factor has rarely played a significant role in the determination of a fair use dispute."); *Author's Guild v. Hathitrust*, 755 F.3d at 98 ("The second . . . factor . . . is not dispositive."); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006) ("The second factor may be of limited usefulness where the creative work . . . is . . . transformative."). Because the Court has determined that the use of the Mural in the Film was transformative, a discussion of the nature of the Mural is unnecessary.

fair use."). Nonetheless, at least one other factor weighs heavily in Defendants' favor—market effect. That is, courts analyze whether the infringing work functions practically as a market substitute, such that "potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild v. Google,* 804 F.3d at 223. The relevant inquiry is "whether the secondary use usurps the market of the original work." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d at 96 (quoting *Campbell*, 510 U.S. at 593). Market usurpation is evident "where the infringer's target audience and the nature of the infringing content is the same as the original." *Cariou*, 714 F.3d at 709.

A fair reading of Plaintiffs' complaint allows only for the conclusion that the target audience of the Film is drastically different from that of the Mural. The Film targets moviegoers of "action thrillers" with a plot "antithetical to the message of peace that forms the basis of both Plaintiffs' work[.]" (Compl. ¶¶ 15-16.) The Mural, by contrast, targets "street art enthusiasts" drawn to the graffiti culture of Brooklyn. (*Id*. ¶ 18.) The Film, according to Plaintiffs, was first viewed at a film festival and later distributed to its audience at theaters and through streaming providers such as Netflix, Apple TV, and Amazon Prime. (Compl. ¶ 15.) The Mural's target audience, conversely, views the Mural at a destination near the entrance of the Jefferson Street subway station in Brooklyn. LMNOPI's argument that "[b]ackgound use in documentaries and other movies is an important component of her licensing revenue stream," (Pls. Opp'n 15.), does not undermine the Court's conclusion, because "[t]he possibility, or even the probability or certainty, of some loss of sales does not suffice to make the copy. . . [a] substitute." *Authors Guild v. Google*, 804 F.3d at 224. Accordingly, Defendants' use was fair.

## II. FALSE ENDORSEMENT

Defendants urge dismissal of Plaintiffs' false-endorsement claims contending that given the circumstances under which they appear, no viewer could reasonably conclude that Plaintiffs endorsed the Film despite the inclusion of LMNOPI's tag and Blaney's likeness.[7] (Defs.' Mot. 17.) Here again, the Court agrees.

To state a claim for false endorsement, a plaintiff must allege that the defendant "(1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services." *Burck v. Mars, Inc.*, 571 F. Supp.2d 446, 454 (S.D.N.Y. 2008). In *Rogers v. Grimaldi*, the Second Circuit, held that "in general the [Lanham] Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." 875 F.2d 994, 999 (2d Cir. 1989). Admittedly, a determination of the likelihood of consumer confusion is generally a factual issue. However, a Lanham Act claim may be dismissed, where, as here, a plaintiff fails to sufficiently plead confusion as to source or ownership. *See Cummings v. Soul Train Holdings, LLC*, 67 F. Supp. 3d 599, 605 (S.D.N.Y. 2014) ("Although consumer confusion is normally a factual question, claims may be dismissed as a matter of law where the plaintiff cannot possibly show confusion as to source or ownership."); *Louis Vuitton,* 868 F. Supp. 2d at 182 ("Although many courts have considered the *Rogers* test on a summary judgment motion, not on a motion to dismiss, the circuit has never stated that a court cannot properly apply the Rogers test (or the likelihood of confusion factors) on a motion to dismiss."). As such, "where an expressive work

---

[7] It is not altogether clear that LMNOPI's trademark appears in the Film at all given that Plaintiffs' complaint alleges that her tag is affixed to the bottom of the Mural, and, as noted above, the view of the bottom one-third of the Mural is obstructed.

is alleged to infringe a trademark, 'the likelihood of confusion must be particularly compelling'" in order for a plaintiff to successfully bring a Lanham Act claim. *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 182 (S.D.N.Y. 2012) (quoting *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993)).

As a threshold matter, Plaintiffs fail to allege a danger of consumer confusion, and instead merely assert that Defendants' use of their marks falsely implies that Plaintiffs "authorized the use of the [Mural]" in the Film. (Compl. ¶ 33.) This allegation is insufficient to invoke the Lanham Act, which proscribes deception as to affiliation, connection, association or origin. *Cummings*, 67 F. Supp. 3d at 605. Nonetheless, in Plaintiffs' submission, they contend that Defendants "created the false impression in the mind of the viewer that the Plaintiffs endorsed the [Film] . . . and that this false impression is harming the good will they have developed over the years in association with their respective 'brands.'" (Pls.' Opp. 18.) Even assuming this allegation was actually pleaded, it cannot overcome Defendants' motion.

The case of *Cummings* is instructive here. In *Cummings*, the plaintiff, a former musician, alleged that the use of his image, likeness, and voice in DVD sets and related promotional materials created the false impression that he approved of, sponsored, or was otherwise associated with the DVD sets. 67 F. Supp. 3d at 604. The court dismissed the plaintiff's claims, finding that he failed to sufficiently allege that the defendants' inclusion of him in the promotional material was explicitly misleading as to source or content of the DVD sets, especially given that the plaintiff was depicted along with many other artists, and the defendants' trademarks appeared on the DVD sets' packaging and contents. *Id*. at 606. The same result is warranted in this case.

Here, the Mural appears briefly in the Film in a scene with several other works of street art. Additionally, Plaintiffs have not alleged a single plausible fact that the inclusion of the Mural in the Film would serve to confuse consumers that Plaintiffs sponsored, endorsed, or were otherwise associated with the Film. Indeed, as was the case in *Cummings*, undercutting any such potential allegation, the Film displays, among other things, trademarks associated with its production and distribution companies. Because Plaintiffs have failed to plead facts sufficient to allege consumer confusion, Plaintiffs' false endorsement claims must fail.[8]

### III. Blaney's State Law Claim

Having dismissed all of the federal claims in this action, the Court declines to exercise supplemental jurisdiction over Blaney's state law claims pursuant to 28 U.S.C. § 1367(c)(3). *See Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.,* 514 F.3d 240, 250 (2d Cr. 2008)) ("We have said that if a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'"); *see also First Capital Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) ("The exercise of supplemental jurisdiction is left to the discretion of the district court[.]").

---

[8] Additionally, LMNOPI's false endorsement claim is dismissed as duplicative of her copyright infringement claim to which Blaney does not join. *See Dastar Corp. v. Twentieth-Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) ("We have been careful to caution against misuse or overextension of trademark . . . into areas traditionally occupied by . . . copyright"); *Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 63 (2d Cir. 2001) ("We perceive no need in the interests of fairness to . . . expand the scope of trademark, because the law affords . . . artists a number of other protections, [including copyright protection].") LMNOPI emphasizes that the inclusion of her tag indicates "falsely . . . that [she] authorized [its] use . . . when [she] did not." (Compl. ¶ 33.) Without more, such language mimics her initial contention that her copyrighted material was used "without [her] permission or consent." (*Id*.) The apparent similarity between the claims precludes LMNOPI from alleging false endorsement in the present action. *See generally Dastar Corp.*, 539 U.S. at 23; *Oliveira v. Frito-Lay, Inc.*, 251 F.3d at 56.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' complaint for failure to state a claim is GRANTED.  Accordingly, Plaintiff's complaint is dismissed in its entirety.

                                             SO ORDERED.

Dated: Brooklyn, New York                      /s/ LDH
       March 30, 2020                            LASHANN DEARCY HALL
                                                United States District Judge